FILED
CLERK
6/29/2021 3:06 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X
ROBERT SHENCAVITZ,

            Plaintiff,

   -against-

YUJI SUGIMOTO,

            Defendant.
------------------------------------------------------------X

**MEMORANDUM OF DECISION & ORDER**

18-cv-5687 (GRB)(RML)

**GARY R. BROWN, United States District Judge**:

    Plaintiff Robert Shencavitz ("Shencavitz"), a sailboat rigging technician, while effecting repairs on a sailboat owned by defendant Yuji Sugimoto ("Sugimoto"), struck his head on radar equipment while ascending via pulley along the vessel's mast. Sugimoto had no role in supervising or directing the repairs, which were being performed by a boat yard at which Shencavitz worked. A curious application of a provision of New York Labor Law, which provides strict liability against owners for failure to provide proper safety equipment for work done "at elevation," presents an interesting issue in resolving Sugimoto's motion for summary judgment.

    **FACTS**

    The material facts are entirely undisputed. Sugimoto's sailboat, called the "Yumi III," is a 2005 42' Beneteau sailing yacht equipped with two bathrooms, a full kitchen, air conditioning and sufficient furnishings to sleep six people. Docket Entry ("DE") 16, ¶¶ 1-5. On March 21, 2017, while the sailboat was moored and maintained at Willis Marine Center, from which Sugimoto

1

purchased the craft, the boatyard conducted repairs and maintenance of the sailboat's rigging in anticipation of installing an "inner forestay." *Id.* ¶¶ 1, 16, 20, 25. Sugimoto, who paid for the work, played no role in the work and was unaware of the details, though he was present at the time. *Id.* ¶¶ 21-22, 26-27, 29.

Todd Willis, the boatyard's co-owner, repeatedly hoisted Shencavitz up the mast using the halyard, the rope that raises and lowers the sails. DE 18 at 3-4. Rigging technicians, like Shencavitz, typically ascend sailboat masts by being hoisted via the halyard, though a crane can also be used. DE 16, ¶¶ 8-11. After two trips, Shencavitz suggested using a crane, but Jeff Willis (the other co-owner of the boatyard) decided that, because doing so would require moving the boat, it was faster and easier to continue to use the halyard. DE 18 at 4. At his deposition, Sugimoto drew a picture of the scene:



DE 16, ¶ 31.

On his third trip up the mast, Shencavitz struck the top of his head against the bottom of the radar unit, sustaining injury. *Id.* ¶¶ 37, 40. Willis pulled Shencavitz into the radar mount, but Shencavitz did not fall. *Id.* ¶¶ 39-40. The radar unit, which protruded from the mast, was plainly visible. *Id.* ¶ 33. Shencavitz had successfully navigated the climb twice without difficulty, pushing himself away from the mast to avoid contact with the unit. *Id.* ¶¶ 32, 36. The ship was in good working order, with no relevant dangerous conditions. *Id.* ¶¶ 42-44.

Based on these facts, defendant moves for summary judgment.

**DISCUSSION**

This motion for summary judgment is decided under the oft-repeated and well-understood standard for review for these matters, as discussed in *Bartels v. Inc. Vill. of Lloyd Harbor*, 97 F. Supp. 3d 198, 211-12 (E.D.N.Y. 2015), *aff'd*, 643 F. App'x 54 (2d Cir. 2016), which discussion is incorporated by reference herein. In sum, the question before the Court is whether, based upon the undisputed facts, the defendants are entitled to judgment.

The parties do not dispute that, under a traditional negligence analysis, Sugimoto cannot be found liable. *Wojcik v. 42nd St. Dev. Project*, 386 F. Supp. 2d 442, 458 (S.D.N.Y. 2005) ("It is settled law that where the alleged defect or dangerous condition arises from the contractor's methods and the owner exercises no supervisory control over the operation, no liability attaches to the owner ... under section 200 of the Labor Law."). Plaintiff also does not appear to contest defendant's arguments as to his claim under New York Labor Law Section 241(6). Rather, the only question here is whether any liability might attach as a result of New York's "scaffold law," a provision related to workplace injuries associated with elevation differentials.

Section 240(1) of the New York Labor Law provides as follows:

All contractors and owners and their agents, except owners of one and two-family dwellings[1] who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure[2] shall furnish or erect, or cause to be furnished or erected for the

---
[1] Defendant's contention that the subject yacht falls within the "one or two family dwelling" exception contained in the statute proves unpersuasive. The sole case relied upon by defendant, *Zahoransky v. Lissow*, holds that "a court must look to the use to which a defendant has put the property." 831 N.Y.S.2d 357 (Sup. Ct. 2006) (citation omitted). The yacht in *Zahoransky*, similarly appointed to the Yuma III, regularly functioned as a second home for the defendant in that case. By contrast, Sugimoto only slept on the Yuma III overnight on occasion. Even assuming, therefore, that the holding in *Zahoransky* is correct, it is inapplicable here.

[2] Any question about whether a sailboat would constitute a structure has been effectively eradicated by the New York Court of Appeals, which has construed this word to include "any production or piece of work artificially built up or composed of parts joined together in some definite manner." *Lewis-Moors v. Contel of New York, Inc.*, 78 N.Y.2d 942, 943 (1991) (applying statute to a telephone pole) (quoting *Caddy v. Interborough Rapid Transit Co.*, 195 N.Y. 415, 420 (1909) (applied to a train car)). A casual reading of this language might suggest that this

4

performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.

N.Y. Lab. Law § 240 (McKinney). "[T]he purpose of th[is] strict liability statute is to protect construction workers not from routine workplace risks, but from the pronounced risks arising from construction worksite elevation differentials . . . ." *Runner v. New York Stock Exch., Inc.*, 13 N.Y.3d 599, 603 (2009). Following certification of questions by the Second Circuit, the Court of Appeals clarified in *Runner* that the statute was not limited to "falling worker" and "falling object" cases, as had sometimes been assumed. *Id.* at 604.

But in further clarifying the questions asked, the New York Court of Appeals held that "[t]he relevant inquiry—one which may be answered in the affirmative even in situations where the object does not fall on the worker—is rather whether the harm flows directly from the application of the force of gravity to the object." *Id.* . *Runner* further held:

> Labor Law § 240 (1) was designed to prevent those types of accidents in which the scaffold, hoist, stay, ladder or other protective device proved inadequate to shield the injured worker *from harm directly flowing from the application of the force of gravity to an object or person.*

*Id.* (emphasis in original) (quoting *Ross v. Curtis-Palmer Hydro-Elec. Co.*, 81 N.Y.2d 494, 501 (1993)). In subsequently applying the Court of Appeals' determination to the case before it, in which a plaintiff's fingers were amputated by a rope being used to lower a reel of wire down a set of stairs, the Second Circuit reiterated that "liability under New York Labor Law § 240(1) . . . arises when 'the harm [that causes an injury] flows directly from the application of the force of

---

definition of "structure" could apply to nearly anything. That conclusion, in fact, is the studied opinion of the New York Court of Appeals. *Caddy*, 195 N.Y. at 421 (noting "the limitless variety of objects which may be described as structures" (citing *Flannigan v. Ryan,* 85 N.Y.S. 947 (App. Div. 1903) (statute applied to an anchorage pier of the Williamsburg Bridge) and *Madden v. Hughes*, 93 N.Y.S. 324 (App. Div. 1905), *aff'd*, 185 N.Y. 466 (1906) (application to a scow)).

gravity to the object[.]'" *Runner v. New York Stock Exch., Inc.*, 590 F.3d 904, 905 (2d Cir. 2010).

This requisite that gravity act as the causal force limits the application of the statute in this case. Plaintiff was injured during an ascent powered by the pull of the shipyard owner. Gravity played no role in the accident. Plaintiff argues that certain language from the Court of Appeals in *Runner* suggests that the statute should apply even without the motive force of gravity:

> it is generally agreed that the purpose of the strict liability statute is to protect construction workers not from routine workplace risks, but from the pronounced risks arising from construction work site elevation differentials, and, accordingly, that there will be no liability under the statute unless the injury producing accident is attributable to the latter sort of risk.

13 N.Y.3d at 603 (citation omitted). The argument has some appeal and, because the *Runner* court found the statute applied to the facts of that case, any language about the statute's limitations is ultimately *dicta*. However, a close reading of *Runner* reveals that the decision, at every turn, was limited to the application of the statute to gravity-induced accidents. *Id*. at 604 (finding that "the governing rule" is concerned with "harm directly flowing from the application of the force of gravity," and so applying the statute because "the harm to plaintiff was the direct consequence of the application of the force of gravity to the reel"); *see also* Rocovich v. Consol. Edison Co., 78 N.Y.2d 509, 514 (1991) ("The contemplated hazards [addressed by Section 240(1)] are those related to the effects of gravity . . . .").[3]

Any remaining doubt on this question is resolved by *Gasques v. State*, 15 N.Y.3d 869, 870 (2010), in which a plaintiff "was injured while repainting the inside of a leg of the Kosciuszko Bridge, using a 'spider scaffold.' His hand was injured when it became caught between the scaffold and the leg of the bridge, while the scaffold was ascending." Holding the statute inapplicable, the

---

[3] Plaintiff, in fact, appears to concede this point, in observing that the Second Circuit "specifically noted that the New York Court of Appeals held that liability under New York Labor Law section 240(1) arises when the harm flows directly from the application of the force of gravity." DE 18 at 7 (citing *Runner*, 590 F.3d at 905).

Court of Appeals upheld dismissal because the "injury was not the direct consequence of the application of the force of gravity to an object or person." *Id.* (quoting *Runner*, 713 N.Y.3d at 604). Therefore, this case, which involves an injury resulting from a hand-powered ascent, did not result from the application of gravity to a person or object, and is therefore outside the ambit of the statute.

As an alternative basis for this holding, the instant accident was not "the direct consequence of a failure to provide statutorily required protection against a risk plainly arising from a workplace elevation differential." *Runner,* 13 N.Y.3d at 605. As the Second Circuit subsequently explained:

> Despite the breadth of the statutory text, "New York limits liability under section § 240(1) to accidents related to the inherent effects of gravity," *Runner v. N.Y. Stock Ech., Inc.*, 568 F.3d 383, 386 (2d Cir.2009), "where protective devices are called for either because of a difference between the elevation level of the required work and a lower level or a difference between the elevation level where the worker is positioned and the higher level of the materials or load being hoisted or secured." *Rocovich v. Consol. Edison Co.*, 78 N.Y.2d 509, 514, 577 N.Y.S.2d 219, 583 N.E.2d 932 (1991). In order to be entitled to recovery under § 240(1), a plaintiff must show both (1) the existence of an elevation-related hazard of the type encompassed by the statute, and (2) an injury proximately caused by the absence of proper protection from the hazard. *See Wilinski v. 334 E. 92nd Hous. Dev. Fund Corp.*, 18 N.Y.3d 1, 7, 935 N.Y.S.2d 551, 959 N.E.2d 488 (2011).

*Diaz v. Globalfoundries U.S., Inc.*, 616 F. App'x 450, 451–52 (2d Cir. 2015). Looked at from this perspective, plaintiff undoubtedly faced an elevation-related hazard of the type encompassed by the statute. But there is nothing to suggest that a failure to provide "proper protection" led to the injury. Hoisting a rigger using the halyard is, as plaintiff acknowledges, a "typical" means of working on sailboat rigging. The only other elevation mechanism suggested – the use of a crane to lift the plaintiff – would not necessarily have avoided the accident. Thus, it cannot be said that plaintiff's "injuries were proximately caused by the absence of proper safety equipment." *Id.* at 453.

That the injury here had nothing to do with the hazards of working at elevation disposes

7

of the question. The New York Court of Appeals rejected a claim of a plaintiff who claimed injury based upon his "need to work in a contorted position in order to avoid falling down the deep shaft on which he was working." *Ross,* 81 N.Y.2d at 500. *Ross* observed that "however unsafe the makeshift 'scaffold' may have been in that respect, it cannot be said that the device did not serve the core objective of Labor Law § 240(1)—preventing plaintiff from falling down the shaft." *Id.* at 501. The same is true of the unfortunate accident here. The plaintiff did not fall, and the injury cannot be said to have been caused by the absence of protective equipment.

**CONCLUSION**

Based on the foregoing, defendant's summary judgment motion is granted.

The Clerk of the Court is directed to enter judgment consistent with this Order and close the case.


**SO ORDERED.**

Dated: Central Islip, New York
          June 29, 2021

                                                            /s/ Gary R. Brown
                                                            GARY R. BROWN
                                                            United States District Judge